**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas B. MARSHALL, Jr.,**
**Defendant-Appellant.**

No. 84–5849.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1985.

Decided July 15, 1985.

\*   \*   \*   \*   \*   \*

James F. Schaeffer, Sr. (argued), Schaeffer and Schaeffer, Memphis, Tenn., for defendant-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza (argued), Memphis, Tenn., for plaintiff-appellee.

Before MERRITT and CONTIE, Circuit Judges, and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

Defendant, a former Memphis police officer, appeals his jury conviction for conspiracy to influence testimony of a witness before a federal grand jury, 18 U.S.C. § 371, obstruction of justice, 18 U.S.C. § 1503, and extortion under color of official right of a duly commissioned officer, 18 U.S.C. § 1951. Defendant argues on appeal that the District Court should have declared a mistrial because of an unauthorized telephone conversation between a juror and a relative of one of the government's witnesses. He also argues that the District Court erred in refusing to grant a mistrial based on a remark made by the Court to the effect that defendant's answer to a question seemed "rehearsed." On the issue of juror contact, defendant maintains that *Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523 (6th Cir.1984), requires that we reverse the District Court's denial of the motion for mistrial. We hold that the *Budoff* decision is limited to its narrow facts, and does not control the present case. We affirm defendant's jury conviction.

## I.

Defendant was a police officer assigned to the Organized Crime Unit of the Memphis Police Department. In this capacity, he and Detective Chism participated in an investigation of theft and interstate transportation of cereal products. During the course of this investigation, the officers found a quantity of stolen cereal at a local grocery store; the officers informed the store owner that a federal grand jury investigation would ensue.

The activities for which defendant was convicted arose out of his subsequent contacts with the store owner and Detective Chism. The government presented evidence to the federal grand jury showing that defendant had extorted money from the store owner for the purpose of attempting to bribe Detective Chism. On October 21, 1984, the Federal Grand Jury for the Western District of Tennessee indicted defendant for conspiracy to influence the testimony of Detective Chism, extortion, and obstruction of justice. The jury trial commenced on May 29, 1984; the jury returned a verdict against the defendant on all three counts on June 6, 1984.

## II.

Defendant's first ground for appeal arises from an unauthorized telephone conversation between one juror and the brother of a government witness. Relying on *Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523 (6th Cir.1984), defendant argues that the contact places this case within the "class of cases where some irregularities so taint the trial that the appearance of impropriety compels a new trial as a prophylactic rather than remedial measure." *Id.* at 1525–26. The *Budoff* decision, properly construed, should be limited to the narrow facts presented in that case, and is not controlling here.

In the present case, juror Sowell was contacted by his work supervisor the day before the close of defendant's highly publicized trial. Although Sowell did not realize it at the beginning of trial, his supervisor was the brother of police officer Hollie, a key government witness who was scheduled to testify against Marshall. The supervisor was trying to ascertain when the juror would return to work. The juror refused to discuss the case or answer any questions about the progress of the trial. The supervisor then asked, "Did my brother testify yet?". The juror refused to respond to the question, and concluded the conversation.

Immediately the next day, the juror notified the Court of the contact. The Court had admonished the jurors at the start of trial each day that they were not to read about the case or discuss it with anyone. The Court conducted a hearing in which Sowell conveyed that, although he did not realize the identity of the government's witness at the beginning of trial, the phone call made him realize that the witness was a member of a family that he greatly respected. Sowell expressed some concern that the disposition of this case could adversely affect his relationship with his supervisor. The Court then decided to replace the juror with an alternate, and denied defendant's motion for a mistrial.

Defendant's argument that this contact comes within the reach of *Budoff* fails for several reasons. First, *Budoff* presented an extremely close case on the merits. The issue of proximate causation in the wrongful death action in *Budoff* was deemed so close that the potential for actual prejudice was substantial. 732 F.2d at 1527.

The present case does not offer similar closeness of proof. The transcript of the six day trial yields convincing proof of defendant's guilt. Both testimonial and documentary proof offered by the government showed strong evidence of defendant's illegal activities. The potential for prejudice in this case is therefore much less than in *Budoff.*

Second, in *Budoff* the proscribed contact was made by the daughter of plaintiff's counsel, who contacted the son of one of the jurors. In addition to her familial connection to the trial, she also had a professional connection; she worked as a paralegal for her father's law firm and had been present in the courtroom from the start of the trial.[1] *Budoff* affirmed the strong principle that "a new trial should be ordered when contact with a juror is purposely made by counsel or his employee ..." *id.* at 1527, and stressed that "when contact is initiated by counsel or an immediate subordinate of counsel ... the evenhandedness of the federal scales of justice has been called into question...." *Id.* at 1526.

In the present case, contact was made by a lay person completely unrelated to counsel for either side or to the parties. The particular concerns for maintaining both the fact and the appearance of propriety that were implicated in *Budoff* are simply not present when, as here, a lay person unrelated to the trial process makes the contact. In this regard, the present case is much closer to the facts in *United States v. Pennell*, 737 F.2d 521 (6th Cir.1984), in which phone calls were made to jurors by an anonymous caller.

1. We should reiterate here that the contact in *Budoff* was not done to intentionally affect the outcome of the trial. *See Budoff*, 732 F.2d at 1525.

Third, in *Budoff* the charge of jury taint was made because the juror there remained on the jury; he participated in the deliberations as the elected foreman. The possibility that the contact would in some manner affect the jury deliberations and verdict was therefore quite distinct.

Here, the District Court immediately replaced the juror with an alternate. The juror who had been contacted took no part in any deliberations. The District Court essentially erected a wall between the potential for taint and the remaining jurors.

The foregoing analysis illustrates that the District Court did not err when it refused to declare a mistrial on the basis of the unauthorized juror contact. The present case does not fall within that narrow class of cases in which, regardless of whether prejudice is proven, a court should grant a mistrial as a preventive rather than a remedial measure.

### III.

Defendant's second ground for appeal is a remark made by the District Court in response to a narrative, non-responsive answer offered by defendant on direct examination. The Court responded to the government's objection to defendant's answer by stating: "Mr. Shaeffer, just ask him to answer the questions. This is a narration of something previously rehearsed apparently." Tr. 387.

The next day, defense counsel made an objection to the Court's use of the word "rehearsed;" the Court thereupon made a curative instruction to the jury, explaining that they should attach no significance to the word "rehearsed," and that it was solely within their province to assess each witness' credibility.

Defendant urges that the remark was non-curable; that it implied that defendant was perjuring himself; that the Court had invaded the province of the jury and violated the high standard of cautious impartiality imposed on judges.

■ One isolated remark, of a slightly ambiguous nature, which was later retract-

ed, is not so potent as to deny defendant a fair trial. *See Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942) ("The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting.")

In conclusion, the jury conviction is affirmed.